**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**William David RYE, Respondent.**

No. 2011–SC–000057–KB.

Supreme Court of Kentucky.

April 21, 2011.

*OPINION AND ORDER*

Respondent, William David Rye, stands accused of violating several provisions of the Rules of Professional Responsibility arising from his representation of and counsel toward Maria Plank (then Frances) in a custody matter. The Trial Commissioner has recommended that Respondent, whose Bar Roster Address is 511 South Main Street, Second Floor, Hopkinsville, Kentucky 42240, and whose KBA Member Number is 88550, be found to have committed ethical violations related

to misadvice, lack of candor, and failure to respond to a demand for information from the KBA, and issue a public reprimand pertaining to these violations. Respondent has stipulated to the facts underlying these violations and a public reprimand as the appropriate discipline. Though doubtful of the legitimacy of some of the alleged violations, this Court ultimately agrees with the recommended discipline, and adopts the recommendation of the Trial Commissioner.

Respondent had represented Plank in her divorce and child support contest from May through August of 2004. In August 2004, Plank was awarded child support payments from her former husband, however, custody had yet to be formally determined. In the meantime, he and Plank were operating under an informal agreement to share custody. In February 2005, Plank considered moving with her daughter to Iowa and consulted with Respondent to inquire about any ramifications of such a move. Respondent told her it would pose no problem. In March, Plank, as well as Plank's mother, called Respondent again to confirm that she could take her daughter to Iowa, and that she did not need to inform the court thereof.

Following Respondent's advice, still before any formal adjudication of custody, Plank moved with her daughter to Iowa. Soon thereafter, Plank's ex-husband filed an emergency motion for temporary custody due to Plank's removing their daughter from the state without any notice. Ultimately, the court granted not only temporary, but permanent custody to the ex-husband.

In determining custody, the trial court focused on the best interest of the child. Factoring into this evaluation was Plank's abrupt relocation out of state which, in the court's opinion, deprived the daughter of several interests, especially her ability to continue her close relationship with her father. Plank attempted to explain this sudden relocation by the allegedly threatening behavior of her former husband. The court, however failed to believe these allegations were significant enough to justify Plank's assertion that it was in the daughter's best interest to live with her in a new state.

This custody dispute was appealed all the way through to this Court. On appeal, Plank (through new counsel) argued that the trial court abused its discretion by factoring her relocation into its custody determination. For this proposition, she relied on *Fenwick v. Fenwick*, 114 S.W.3d 767 (Ky.2003). *Fenwick*, dealing with a similar factual scenario, had suggested that a primary caregiver, prior to a court's final custody decree, was presumptively free to relocate the child without any repercussions. To overcome this presumption and defeat the current primary caregiver's custody, *Fenwick* required proof "that the move seriously endangered the child, and that the harm from change of custody to him would be outweighed by the good." *Frances v. Frances*, 266 S.W.3d 754, 756–57 (Ky.2008). Thus, applying *Fenwick* to her case, Plank argued that no showing of serious endangerment to the daughter had been made, so as to allow the court to factor the Iowa relocation into placing custody with the father.

This Court admitted that *Fenwick* might mandate such a result, but subsequently overruled it. The Court pointed out that *Fenwick* had erroneously applied the modification of custody standard—serious endangerment—to the initial custody determination, to which a different standard—best interest of the child—ought to apply. Since under this more liberal standard, the court's adjudication is not limited to factors indicating serious endangerment, a consideration of the effects of relocation is

entirely appropriate. Thus, this Court found the trial court to have properly exercised its discretion in determining that Plank's relocation to Iowa weighed in favor of vesting custody in her former husband.

In its findings of fact, the Trial Commissioner determined, in light of the outcome of Plank's custody case, that Respondent had misadvised Plank on the propriety of moving to Iowa. In connection with three instances where Respondent had advised Plank that she was free to move to Iowa without any concern, the Trial Commissioner counts three violations by Respondent of SCR 3.130–1.1.

SCR 3.130–1.1 provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The Trial Commissioner apparently concludes that by failing to inform Plank that moving to Iowa might negatively factor into the trial court's custody adjudication, he provided incompetent representation. Indeed, in retrospect, Respondent's advice was incorrect. However, incorrectness and incompetence are two drastically different measures. We cannot agree that Respondent's opinion that relocation would not factor into a custody determination, lacked reasonableness to the degree that it was unethical.

This is especially so where Respondent's advice was endorsed by prior law. While we have no record of what authority Respondent actually relied on for providing his advice, it would certainly have been reasonable to interpret Supreme Court precedent in *Fenwick* to mean that a consideration of relocation has no place in a custody adjudication. Only because this binding authority was overturned did Respondent's advice turn out to be incorrect. Thus, while ultimately wrong, Respondent's advice was entirely reasonable.

Therefore, notwithstanding Respondent's stipulation that such behavior violated the Rules of Professional Responsibility, this Court cannot agree.

However, the Trial Commissioner also made findings of other ethical violations arising out of this representation. Namely, the commissioner found that Respondent violated SCR 3.130–3.3(a)(1) and (2) when he "informed the Trigg Circuit Court that he was unaware of his client's move to Iowa when in fact, he was aware"; that he violated SCR 3.130–8.1(a) when he "informed the Office of Bar Counsel that he was attempting to obtain his client's file from his former employer, when, in fact, no such request was made"; and that he violated SCR 3.130–8.1(b) when he "failed to respond to a letter from Office of Bar Counsel dated August 27, 2008, which informed him of his obligation to respond to a demand for information."

As Respondent has not contested these findings, and these alleged actions do indeed constitute the ethical violations charged, this Court adopts the conclusions of the Trial Commissioner with respect thereto. Also, because the Trial Commissioner's recommended disciplinary action, a public reprimand, is appropriate in light of these violations, this Court elects not to review the recommendation as allowed under SCR 3.370(9). The recommendation is therefore adopted pursuant to SCR 3.370(10).

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1) Respondent is publicly reprimanded.

(2) In accordance with SCR 3.450, Respondent is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $204.68, for which execution may issue from this Court upon finality of this Opinion and Order.

MINTON, C.J.; ABRAMSON, NOBLE, SCHRODER, SCOTT and VENTERS, JJ., concur. CUNNINGHAM, J., not sitting.

Chief Justice

ENTERED: April 21, 2011.

/s/ <u>John D. Minton, Jr.</u>